# NO. 23-4759

In The

# United States Court Of Appeals

## For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff - Appellee,*

v.

**KEITH CATO HAMMIE,**

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE

_____

**BRIEF OF APPELLANT**

_____

**Sandra Barrett**
ATTORNEY AT LAW
P. O. Box 566
Hendersonville, NC  28793
(828) 258-9036

*Counsel for Appellant*

# TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUE .................................................................................1

STATEMENT OF THE CASE AND FACTS ..........................................................1

SUMMARY OF ARGUMENT .................................................................................4

ARGUMENT .............................................................................................................4

    I.    STANDARDS OF REVIEW ..................................................................4

    II.    DISCUSSION OF THE ISSUES ............................................................5

        A.    Guideline Calculation .................................................................5

CONCLUSION ........................................................................................................13

REQUEST FOR ORAL ARGUMENT ...................................................................13

CERTIFICATE OF COMPLIANCE .......................................................................14

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Gall v. U.S.*,
    128 S. Ct. 586 (2007)..................................................................................4

*Kimbrough v. U.S.*,
    552 U.S. 85 (2007).......................................................................................7

*Rita v. U.S.*,
    551 U.S. 338 (2007).....................................................................................6

*U.S. v. Booker*,
    343 U.S. 220 (2005).....................................................................................6

*U.S. v. Godinez-Perez*,
    864 F.3d 1060 (10th Cir. 2016)....................................................................9

*U.S. v. Harvey*,
    352 F.3d 326 (2008).....................................................................................4

*U.S. v. Lee*,
    725 F.3d 1159 (9th Cir. 2013)......................................................................9

*U.S. v. McDowell*,
    745 F.3d 115 (4th Cir. 2014)........................................................................5

*U.S. v. Pena*,
    952 F.3d 503 (4th Cir. 2020)........................................................................5

*U.S. v. Shepard*,
    892 F.3d 666 (4th Cir. 2018)........................................................................5

*U.S. v. Slager*,
    912 F.3d 224 (4th Cir. 2019)........................................................................5

*U.S. v. Thorson*,
    633 F.3d 312 (4th Cir. 2011)..................................................................5

*U.S. v. Wilkinson*,
    590 F.3d 259 (4th Cir. 2010)..................................................................5

**Statutes:**

18 U.S.C. § 922(g)(1).....................................................................................3

18 U.S.C. § 924(c)(1)(A)................................................................................3

18 U.S.C. § 3231.............................................................................................1

18 U.S.C. § 3553(a) ..................................................................................7, 12

18 U.S.C. § 3553(a)(1)...................................................................................8

18 U.S.C. § 3553(a)(2)...................................................................................8

18 U.S.C. § 3553(a)(3)...................................................................................8

18 U.S.C. § 3553(a)(6)...................................................................................8

18 U.S.C. § 3553(b) .....................................................................................10

18 U.S.C. § 3553(b)(1).................................................................................10

21 U.S.C. § 841(a)(1).....................................................................................3

21 U.S.C. § 841(b)(1)(A)...............................................................................3

21 U.S.C. § 841(b)(1)(B)...............................................................................3

28 U.S.C. § 1291.............................................................................................1

**Sentencing Guidelines:**

U.S.S.G. § 2D1.1 ................................................................................... 8, 9, 10

U.S.S.G. § 2D1.1(c) ..................................................................................... 8, 9

**Rules:**

Fed. R. App. P. 3 ................................................................................................ 1

Fed. R. App. P. 4(b) .......................................................................................... 1

Fed. R. Crim. P. 11 ............................................................................................ 3

# STATEMENT OF JURISDICTION

This appeal is from a final judgment in Criminal Case 3:22-cr-202-KDB-SCR-1, entered against Appellant, Keith Cato Hammie, (HAMMIE), on December 7, 2023, in the United States District Court for the Western District of North Carolina (Charlotte). (JA78-83). Notice of Appeal was filed on December 14, 2023. (JA84).

Subject matter jurisdiction in the United States District Court for the Western District of North Carolina was based on 18 U.S.C. § 3231. The District Court had jurisdiction over this case by virtue of the Appellant/Defendant being charged in a seven-count Indictment. (JA11-14). The Fourth Circuit Court of Appeals has jurisdiction over this appeal under 28 U.S.C. § 1291, and Rules 3 and 4(b) of the Federal Rules of Appellate Procedure.

# STATEMENT OF THE ISSUE

I. WHETHER APPELLANT'S SENTENCING GUIDELINE RANGE WAS PROPERLY CALCULATED?

# STATEMENT OF THE CASE AND FACTS

This case begins on November 22, 2021 with the sale of 27.37 grams of methamphetamine (actual) from HAMMIE to an undercover detective (UC) in the parking lot of a car wash in Charlotte, NC. HAMMIE drove to the deal in a Cadillac Escalade, which was registered to his mother. This constitutes Count One of the Indictment. There is no indication from the record that authorities engaged

1

in any prior on-going investigation of HAMMIE or that his criminal activity was part of a larger conspiracy.

The UC successfully engaged HAMMIE in three more similar sales, all in a restaurant parking lot: one on December 6, 2021, when he sold UC 84.08 grams of methamphetamine (mixture); one on January 10, 2022, when he sold UC 81.39 grams of methamphetamine (actual); and one on February 2, 2022, when he sold UC 110.17 grams of methamphetamine (actual). He drove the same Escalade to all meetings and returned to the same Charlotte residence afterwards, except after one deal, when he picked up a child at an elementary school and stopped at a McDonald's before returning to the residence. The total methamphetamine HAMMIE sold to the government over the entire course of its investigation was 303.01grams. The government had no evidence of other drug sales by HAMMIE.

At that point, the UC secured a search warrant for the residence where HAMMIE appeared to live. On February 10, 2022, investigators executed the search warrant and found HAMMIE there with his girlfriend, who quickly drove away with children in another vehicle, not the Escalade. The search produced 1,710.4 grams of methamphetamine (actual) in the garage, 27.32 grams of methamphetamine (actual) in the master bedroom, and four firearms, also in the master bedroom. The total methamphetamine confiscated from the search of HAMMIE's home was 1737.72 grams.

Also found, during the search of the home, were keys to a storage unit, which was later searched, resulting in discovery of a small quantity of suspected cocaine and marijuana. It is unclear whether the cocaine and marijuana were ever analyzed or weighed. The storage unit contained numerous boxes, some empty and some full of household things, and had been rented to the girlfriend. (JA120-123).

HAMMIE was named in a seven-count Indictment filed in the Western District of North Carolina on August 16, 2022, as follows: Count 1—Distribution of at least 5 grams of methamphetamine under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B); Counts 2, 3, and 4—Distribution of at least 50 grams of methamphetamine under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B); Count 5—Possession with intent to distribute methamphetamine under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A); Count 6—Possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A); and Count 7—Possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). (JA9-12). The total amount of methamphetamine HAMMIE was charged with distributing, under all counts, was at least 155 grams. At all times during the trial court proceedings, HAMMIE was represented by counsel. (JA9-12).

On July 31, 2023, HAMMIE pled guilty to Count 1 pursuant to a written Plea Agreement, (JA85-90) and written Factual Basis. (JA13-14). A Rule 11 plea

3

hearing was held August 9, 2023, before Magistrate Judge David Keesler, (JA15-34), who filed the Acceptance and Entry of Guilty Plea that same day. (JA35-38). A Presentence Investigation Report was finalized on November 17, 2023, over HAMMIE'S objections. (JA118-140).

A sentencing hearing was held on December 5, 2023, before District Judge Kenneth D. Bell. (JA47-77). On December 7, 2023 the Judgment, (JA78-83), and Statement of Reasons (JA165-168) were filed. Hammie filed Notice of Appeal on December 14, 2023. (JA84).

## SUMMARY OF ARGUMENT

Appellant (HAMMIE) is entitled to have this Court vacate his sentence and remand his case to the District Court for re-sentencing, because the court failed to account for the purity level of the drugs in determining his Guideline sentencing range, resulting in a sentence that unconstitutionally double counts the quantity of drugs and is unreasonably disproportionate with the gravity of the HAMMIE's criminal behavior.

## ARGUMENT

I. **STANDARDS OF REVIEW**

A. A claim of error at sentencing is reviewed for reasonableness using an abuse of discretion standard under this court's decision in *U.S. v. Harvey*, 352 F.3d 326 (2008) and pursuant to *Gall v. U.S.*, 128 S. Ct. 586 (2007).

4

Initially, appellate review should ensure that the district court committed no significant procedural error, such as improperly calculating the guidelines range. A sentence based on an improperly calculated Sentencing Guidelines range is procedurally unreasonable. *U.S. v. Shepard*, 892 F.3d 666, 670 (4th Cir. 2018).

In assessing whether the guidelines were properly applied, this court should review the sentencing court's findings of fact for clear error and its legal conclusions *de novo*. *U.S. v. Pena*, 952 F.3d 503, 512 (4th Cir. 2020). Clear error exists only when the reviewing court is left with the definite and firm conviction that a mistake has been committed, based on the entire evidence. *U.S. v. Slager*, 912 F.3d 224, 233 (4th Cir. 2019).

In determining whether a district court properly applied a sentencing enhancement, the Court of Appeals reviews for clear error. *U.S. v. McDowell*, 745 F.3d 115, 120 (4th Cir. 2014); *U.S. v. Thorson*, 633 F.3d 312, 317 (4th Cir. 2011). If the court finds no clear error, then it should review the sentence for substantive reasonableness. *U.S. v. Wilkinson*, 590 F.3d 259 (4th Cir. 2010).

## II.   DISCUSSION OF THE ISSUES

### A.   Guideline Calculation

In 1984, Congress passed and the President signed the Sentencing Reform Act ("SRA"), creating the United States Sentencing Commission, which designed the United States Sentencing Guidelines ("Guidelines") for judges to follow in

imposing sentences. Although nothing in the SRA suggested that probation is inappropriate as a means of fostering rehabilitation, the Commission focused its purpose primarily on retribution and crime control in determining a sentence. In 2005, the Supreme Court changed the status of the Guidelines from mandatory to advisory. *U.S. v. Booker*, 343 U.S. 220, 245 (2005).

However, in 2007, the Supreme Court held that courts of appeals may apply a presumption of reasonableness when reviewing within range sentences. *Rita v. U.S.*, 551 U.S. 338, 347, 351 (2007). As a result of *Rita,* sentences within or close to the Guidelines range are almost always affirmed, and it is likely that district judges, concerned about an appeal, might be more likely to stay closely to the Guidelines. Because the primary purpose of the presentence report is to be a tool with which the judge can fashion an individualized sentence to promote rehabilitation, it should focus on the character and personality of the defendant, offer insight into his problems and needs, help understand the world in which he lives, learn about his relationships with people and those salient factors that underlie his specific offense and his conduct in general. To the contrary, under the SRA, probation officers have become the vigilantes of the Guidelines.

It is not good enough for the Courts of Appeals to allow district judges to become passive at the sentencing process, often doing little more than checking the probation officer's math. As the Supreme Court recognized in 2007, the parsimony

6

provision in 18 U.S.C. § 3553(a) constitutes the overarching instruction <u>requiring</u> judges to select the least restrictive sentence that satisfies the purposes of sentencing, taking into account the non-mandatory nature of the Guidelines. *Kimbrough v. U.S.*, 552 U.S. 85, 111 (2007). The sentencing factors incorporated into the Guidelines are as follows:

> "Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed—
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > > (B) to afford adequate deterrence to criminal conduct;
> > >
> > > (C) to protect the public from further crimes of the defendant; and
> > >
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."
>
> 18 USC § 3553(a).

Under the Guidelines, all drug-trafficking sentences are tied to the drug weight. Through counsel, HAMMIE noted an objection to the sentencing court's

7

calculation of methamphetamine quantity, filed as a "Sentencing Memorandum and Request for Downward Variance." (JA141-164), which the undersigned incorporates herein. For the Court's convenience, the relevant portion of that memorandum is quoted below:

> "A Purity-Based increase in punishment may (1) fail to adequately address the nature and circumstances of the individual's conduct; (2) violate the "parsimony clause" of 18 U.S.C. § 3553(a)(1) by generating a sentence range that is "greater than necessary to comply with the public safety factors set forth in § 3553(a)(2); and (3) may result in a sentence that is contrary to § 3553(a)(6) by creating false uniformity. For those who are convicted of a drug-trafficking offense that involves only methamphetamine, the Guidelines might punish such a defendant in one or all of three different ways under U.S.S.G. § 2D1.1(c) (Nov. 2023). The person may be sentenced based on (1) the amount of methamphetamine without any regard to the purity of the methamphetamine (methamphetamine mixture); (2) the amount of the "pure" methamphetamine within the mixture or substance containing methamphetamine (methamphetamine actual); or (3) the amount of pure methamphetamine and the specific chemical composition of the methamphetamine (ICE). *See* § 2D1.1(c *Notes to Drug Quantity Table: (B) & (C); § 2D1.1, comment. (n.8(D))) (Cocaine and Other Schedule I and II Stimulants (and Their Immediate Precursors)*). Thus, while methamphetamine appears to be a single controlled substance, it is potentially punished as three different types of controlled substances.
>
> When determining the potential punishment, the first step is determining which of the three types a defendant's methamphetamine will fall under. *See* § 2D1.1(C) *Notes to Drug Quantity Table: (B). This determination depends on whether law enforcement tested the purity of the methamphetamine. *See Id.* Specifically, the second sentencing option (methamphetamine actual) depends on the "weight of the controlled substance, itself, contained in the mixture or substance." *Id.* For instance, if there are 500 grams of methamphetamine mixture, and a laboratory test shows that the purity of that mixture is 50%, then there are 250 grams of actual

8

methamphetamine. *See Id.* Without the laboratory test, the result, for purposes of sentencing, is 500 grams of a mixture or substance containing a detectable amount of methamphetamine (methamphetamine mixture). *See §* 2D1.1(c) *Notes to Drug Quantity Table: (a). If the laboratory test is even more detailed and shows that the purity is at least 80%, and the methamphetamine consists of d-methamphetamine hydrochloride, the Guidelines consider the controlled substance to be "ICE", and treat the entire 500 grams as 100% actual methamphetamine. *See United States v. Lee,* 725 F.3d 1159, 1166 (9th Cir. (2013) (per curium); *see also United States v. Godinez-Perez,* 864 F.3d 1060, 1068-69 (10th Cir. 2016); U.S.S.G. § 2D1.1(c), *Notes to Drug Quantity Table: (C).

If there is only one form of methamphetamine in a case, one simply goes to § 2D1.1(c), Drug Quantity Table, and locates the gross offense level that corresponds to the quantity of the substance. In cases with multiple forms of methamphetamine or other controlled substances, the analysis is much more complicated.

When there is more than one controlled substance in a case, and because the Guidelines do not assess the same valuation punishment for each controlled substance, the Commission created a common valuation for dissimilar substances (similar to a foreign monetary exchange with the United States dollar as the standard) and converts all controlled substances in such cases to that one common valuation. *See* § 2D1.1, comment. (n.8(B)). That common valuation used to be "marijuana," but now is called "converted drug weight" (hereinafter "CDW"). *See* 2D1.1(c) *Notes to Drug Quantity Table: (K). As to methamphetamine, in the Guideline "exchange/valuation system," one gram of methamphetamine mixture has a common valuation of 2 kilograms of CDW. *See* 2D1.1, comment. (n.8(D)) (Cocaine and Other Schedule I and II Stimulants (and Their Immediate Precursors)*). One gram of methamphetamine actual or ICE has a common valuation of 20 kilograms of CDW. *See Id.* Elementary school mathematics shows that methamphetamine (actual) and ICE have a common valuation that is 10 times greater that methamphetamine (mixture). The above is important even in "single-form" cases—methamphetamine mixture, methamphetamine actual, ICE—because it helps one mathematically understand the difference in punishment between the three forms of methamphetamine.

9

If cases involving heroin, cocaine, or other narcotics do not require a purity analysis, why is purity a sentencing consideration in cases that involve methamphetamine?  Though it does not directly address the issue, here is what the Commission has to say about why purity matters:

> The purity of the controlled substance . . . *may be* relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution . . . [Because] controlled substances are *often* diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics *may* indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.

U.S.S.G. § 2D1.1, comment (n.27(C)  (*emphasis added.*). The Drug Enforcement Agency (DEA), however, functionally rebuts the Commission's generalized assumption in cases that include methamphetamine by reporting that, "[i]n the first half of 2019, samples through the MPP [Methamphetamine Profiling Program] averaged 97.2 percent purity and 97.5 percent potency . . ." With an *average* purity of 97.2%, which means that, in today's trafficking cases, 97.2% purity is not unusually pure—as the average, it represents the typical purity.  Therefore, it cannot be said that purity accurately reflects a person's "role or position in the chain of distribution." *See* § 2D1.1, comment. (n.27(C))."  (JA145-148).

18 U.S.C. § 3553(b) Application of Guidelines in Imposing a Sentence.—

provides guidance to the sentencing court in HAMMIE's case, as follows:

(1)     In General.—Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

18 U.S.C. § 3553(b)(1).

10

Since the conversion of methamphetamine to CDW is intended to punish more harshly those defendants who traffic high purity drugs, and the average purity of methamphetamine on the streets is 97.2%, then setting a defendant's jail time by CDW is, in essence, double counting and unconstitutional. In this case, the Converted Drug Weight (CDW) grossly overstates HAMMIE's criminal conduct. This is precisely where the district court erred at HAMMIE's sentencing. Not only is it unconstitutional to double count the weight of a drug that is 97.2% pure, but the court lacked the factual evidence to assume that HAMMIE was a big-time threat in the country's war on drugs.

There is no evidence of any kind that HAMMIE was involved in a conspiracy or that he was anything more than a middleman between a source of modest supply and a purchaser off the street, who was an undercover agent. There is no evidence of any kind that he ever sold kilo-size amounts of methamphetamine to anyone, nor any evidence that he ever sold cocaine or marijuana at all. There is no evidence of any kind that HAMMIE ever possessed or used a firearm during any drug transaction, and there is no evidence that he was ever asked, or refused, to cooperate with the government or that he had any information that would be considered helpful to the government.

At the sentencing hearing, defense counsel presented the above "actual versus mixture" argument as follows:

11

> Counsel: "I know this Court doesn't often vary downward based solely off of that, but, Your Honor, the –"
>
> The Court: "Never would be more accurate." (JA60).

After additional arguments from both defense counsel and the government, the court's response was:

> " . . . the Court is going to take credit of [the] fact that you [Hammie] have been a good father and husband, . . . [and] the fact that you're a worker is to your credit."
>
> " . . . but if the prosecutor were able to stand up and tell the Court that you should receive a reduction because of your cooperation, the Court would have gladly done what it could to recognize that and get you back to your family quicker."
>
> "You have one of the worst criminal histories I've seen in 40 years of doing this sort of thing."
>
> " You're not a drug user [and] you don't need drug treatment in prison. . . . And so, the Court always recommends that [drug addicts] participate in drug treatment programs while they're incarcerated which gives them the opportunity to earn up to a year off their sentence. You can't do that because you're not a drug addict. . . . So, the Court is going to try to take care of that with a slight variance from the guidelines. But frankly, you don't deserve a variance otherwise." (JA171-173).

HAMMIE submits that the above dialogue discounts the § 3553(a) factors, and is an inadequate response to a non-frivolous argument for a downward variance due to the methamphetamine purity anomaly. It has always been the

12

province of this Court to assure that the District Courts uphold the rights of criminal defendants to fair, equal, and constitutionally sound prosecution. In HAMMIE's case the district judge failed his mandated duties, and in so doing, not only rendered an unreasonable sentence, but also an unconstitutional sentence.

## CONCLUSION

For the reasons advanced in the foregoing arguments, Keith Cato Hammie respectfully requests this Court to vacate the sentence entered by District Court Judge Kenneth C. Bell on December 6, 2023, and to remand his case to the District Court for re-sentencing consistent with this Court's decision.

## REQUEST FOR ORAL ARGUMENT

Appellant, Keith Cato Hammie, respectfully requests that oral argument be heard in this case, because at issue are matters which involve his most sacredly held constitutional right to liberty.

Respectfully submitted this 12th day of April, 2024.

/s/ Sandra J. Barrett
Sandra J. Barrett
Attorney at Law
P. O. Box 566
Hendersonville, NC 28793
828-258-9036
barrett.law.nc@gmail.com

*Counsel for Appellant*
  *Keith Cato Hammie*

13

## CERTIFICATE OF COMPLIANCE

1.This document complies with type-volume limits, exclusive of parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum); this brief contains <u>3,174</u> words.

2.This brief complies with the typeface requirements because it has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

Respectfully submitted this 12th day of April, 2024.

>/s/ Sandra J. Barrett
>Sandra J. Barrett
>Attorney at Law
>P. O. Box 566
>Hendersonville, NC 28793
>828-258-9036
>barrett.law.nc@gmail.com
>
>*Counsel for Appellant*
>*Keith Cato Hammie*

14